# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>RON HAUS; EVA BEROU; and LOS PRADOS COMMUNITY ASSOCIATION,<br><br>Defendants. | Case No. 2:17-cv-01756-RFB-DJA<br><br>**ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiff Federal National Mortgage Association's Motion for Summary Judgment. ECF No. 26. For the following reasons, the Court grants Plaintiff's motion.

## II. PROCEDURAL BACKGROUND

Plaintiff Federal National Mortgage Association ("Fannie Mae") sued Defendants Ron Haus, Eva Berou, and Los Prados Community Association ("the HOA") on June 26, 2017. ECF No. 1. Fannie Mae seeks declaratory relief that a nonjudicial foreclosure sale conducted in 2013 under Chapter 116 of the Nevada Revised Statutes ("NRS") did not extinguish Fannie Mae's interest in a Las Vegas property. Id. To obtain the relief, Fannie Mae asserts five claims in the Complaint: (1) declaratory relief under 12 U.S.C. § 4617(j)(3) against Haus and Berou; (2) quiet title under 12 U.S.C. § 4617(j)(3) against Haus and Berou; (3) declaratory relief under the Fifth and the Fourteenth Amendments to the United States Constitution against all Defendants; (4) quiet

title under the Fifth and the Fourteenth Amendments to the United States Constitution against Haus and Berou; and (5) permanent and preliminary injunction against Haus and Berou. Id. The HOA answered the Complaint on October 11, 2017, and Haus and Berou answered the Complaint on January 12, 2018. ECF Nos. 14, 16.

Fannie Mae now moves for summary judgment. ECF No. 26. The HOA opposed the motion as did Haus and Berou. ECF Nos. 27, 28. Fannie Mae filed a single reply. ECF No. 29. On July 23, 2019, the Federal Housing Finance Agency filed an amicus in support of Plaintiff's summary judgment motion.

### III. FACTUAL BACKGROUND

The Court makes the following findings of undisputed and disputed facts.[1]

#### a. Undisputed facts

This matter concerns a nonjudicial foreclosure on a property located at 5208 Las Cruces Drive, Las Vegas, Nevada 89130 (the "property"). The property sits in a community governed by the HOA. The HOA requires its community members to pay HOA dues.

Nonparty Karen A. Cosner borrowed funds from First Magnus Financial Corporation to purchase the property in 2006. To obtain the loan, Cosner executed a promissory note and a corresponding deed of trust to secure repayment of the note. The deed of trust, which lists Cosner as the borrower, First Magnus Financial Corporation as the lender, and Mortgage Electronic Registration Systems, Inc., ("MERS") as the beneficiary, was recorded on October 9, 2006. MERS recorded an assignment of the deed of trust to Nationstar. On January 15, 2013, Nationstar executed an assignment of the deed of trust to Fannie Mae.

---

[1] The Court takes judicial notice of the publicly recorded documents related to the deed of trust and the foreclosure as well as Fannie Mae's Single-Family Servicing Guide. Fed. R. Evid. 201 (b), (d); Berezovsky v. Moniz, 869 F.3d 923, 932–33 (9th Cir. 2017) (judicially noticing the Guide); Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (permitting judicial notice of undisputed matters of public record).

Cosner fell behind on HOA payments. From May 2012 through November 2012, the HOA, through its agent, recorded a notice of delinquent assessment lien, followed by a notice of default and election to sell and then a notice of foreclosure sale. On March 29, 2013, the HOA held a foreclosure sale on the property under NRS Chapter 116. Defendants Ron Haus and Eva Berou purchased the property at the foreclosure sale. A foreclosure deed in favor of the Buyers was recorded on April 4, 2013.

However, Federal National Mortgage Association ("Fannie Mae") previously purchased the note and the deed of trust in November 2006. While its interest was never recorded under its name, Fannie Mae continued to maintain its ownership of the note and the deed of trust at the time of the foreclosure. Nationstar serviced the note and was listed as the beneficiary of the deed of trust, on behalf of Fannie Mae, at the time of the foreclosure.

The relationship between Fannie Mae and its servicers, is governed by Fannie Mae's Single-Family Servicing Guide ("the Guide"). The Guide provides that servicers may act as record beneficiaries for deeds of trust owned by Fannie Mae. It also requires that servicers assign the deeds of trust to Fannie Mae on Fannie Mae's demand. The Guide states:

> The servicer ordinarily appears in the land records as the mortgagee to facilitate performance of the servicer's contractual responsibilities, including (but not limited to) the receipt of legal notices that may impact Fannie Mae's lien, such as notices of foreclosure, tax, and other liens. However, Fannie Mae may take any and all action with respect to the mortgage loan it deems necessary to protect its ... ownership of the mortgage loan, including recordation of a mortgage assignment, or its legal equivalent, from the servicer to Fannie Mae or its designee. In the event that Fannie Mae determines it necessary to record such an instrument, the servicer must assist Fannie Mae by [ ] preparing and recording any required documentation, such as mortgage assignments, powers of attorney, or affidavits; and [by] providing recordation information for the affected mortgage loans.

///

///

The Guide also allows for a temporary transfer of possession of the note when necessary for servicing activities, including "whenever the servicer, acting in its own name, represents the interests of Fannie Mae in ... legal proceedings." The temporary transfer is automatic and occurs at the commencement of the servicer's representation of Fannie Mae. The Guide also includes a chapter regarding how servicers should manage litigation on behalf of Fannie Mae. But the Guide clarifies that "Fannie Mae is at all times the owner of the mortgage note[.]" Finally, under the Guide, the servicer must "maintain in the individual mortgage loan file all documents and system records that preserve Fannie Mae's ownership interest in the mortgage loan."

Finally, the Guide "permits the servicer that has Fannie Mae's [limited power of attorney] to execute certain types of legal documents on Fannie Mae's behalf." The legal documents include full or partial releases or discharges of a mortgage; requests to a trustee for a full or partial reconveyance or discharge of a deed of trust, modification or extensions of a mortgage or deed of trust; subordination of the lien of a mortgage or deed of trust, conveyances of a property to certain entities; and assignments or endorsements of mortgages, deeds of trust, or promissory notes to certain entities.

In 2008, Congress passed the Housing and Economic Recovery Act ("HERA"), 12 U.S.C. § 4511 *et seq.*, which established the Federal Housing Finance Agency ("FHFA"). HERA gave FHFA the authority to oversee the government-sponsored enterprises Fannie Mae and the Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, the "Enterprises"). In accordance with its authority, FHFA placed the Enterprises, including Fannie Mae, under its conservatorship in 2008. Neither FHFA nor Fannie Mae consented to the foreclosure extinguishing Fannie Mae's interest in the property in this matter.

b. **Disputed Facts**

The parties dispute whether Fannie Mae acquired an interest in the property under Nevada law.

**IV.     LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. Cty. of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

**V.      DISCUSSION**

The Court finds that the claims in this case may be resolved by answering two questions: a) whether the Federal Foreclosure Bar under Section 4617(j) applies to claims brought by Fannie Mae and b) whether Fannie Mae's claims under Section 4617 to preserve assets of the conservatorship or the FHFA are subject to the six-year statute of limitations under Section 4617(b)(12)(A). The Court answers both questions in the affirmative.

First, the Court finds that claims by Fannie Mae in this case should be construed as claims brought by or on behalf of the FHFA as FHFA's agent. Pursuant to HERA, Fannie Mae was placed into conservatorship by FHFA in 2008. As the Ninth Circuit has explained in the context of the identically situated Federal Home Loan Mortgage Corporation ("Freddie Mac"), this means

that the FHFA acquired Fannie Mae's "rights, titles, powers, and privileges with respect to its assets for the life of the conservatorship." Berezovsky v. Moniz, 869 F.3d 923, 927 (9th Cir. 2017) (internal citations omitted). The foreclosure sale in this case took place at a time that Fannie Mae was in conservatorship. Fannie Mae's interest in the subject property was therefore an asset of the FHFA in conservatorship at the time of the foreclosure sale. As the subject property in this case was an asset of the FHFA, the Federal Foreclosure Bar applies, since the "Federal Foreclosure Bar applies to any property for which the Agency serves as conservator and immunizes such property from any foreclosure without Agency consent." Id. Thus, Fannie Mae may assert the application of the Federal Foreclosure Bar in this case.

The Court also finds that the six-year statute of limitations under Section 4617(b)(12)(A) applies to actions brought by Fannie Mae as an agent of the FHFA and while under its conservatorship. The relevant portion of the statute is as follows:

> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [Federal Housing Finance] Agency as conservator or receiver shall be--
> (i) in the case of any contract claim, the longer of--
> (I) the 6-year period beginning on the date on which the claim accrues; or
> (II) the period applicable under State law; and
> (ii) in the case of any tort claim, the longer of--
> (I) the 3-year period beginning on the date on which the claim accrues; or
> (II) the period applicable under State law.

12 U.S.C. § 4617(b)(12)(A).

While the explicit language of this provision only references the "Agency," the Court's statutory analysis does not end there. "In interpreting statutes, a court's task is to construe Congress's intent." Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 958 (9th Cir. 2013). "Whether a statutory term is unambiguous . . . does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined

[not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.'" Yates v. United States, 135 S. Ct. 1074, 1081– 82 (2015) (internal citation omitted). The clear intent of Congress in passing HERA was to be able to provide a mechanism to conserve and beneficially manage the assets of the FHFA. See 12 U.S.C. § 4617(b)(2)(B)(iv) (noting that FHFA has the power "to preserve and conserve the assets and property of the [Enterprises]"); see also County of Sonoma v. Fed. Hous. Fin. Agency, 710 F.3d 987, 993 (9th Cir. 2013) (discussing the scope of FHFA's powers under HERA). This is especially true when those assets are under conservatorship—hence, for example, the creation of the Federal Foreclosure Bar by Congress. Because Fannie Mae operates under the conservatorship of the FHFA and serves essentially as the FHFA's agent with respect to the disposition and sale of FHFA assets in the conservatorship, see 12 U.S.C. § 4617(b)(2)(B), it would be illogical and contrary to the intent of Congress to construe the statute to mean that actions brought by the FHFA's agent Fannie Mae, would be subject to a shorter statute of limitations period for actions to preserve assets than those where the FHFA is itself the named party. Indeed, such a construction would serve to dissipate the assets of the FHFA and the conservatorship by requiring the FHFA to nominally appear separately in each action to preserve its assets along with Fannie Mae—even though the legal arguments of both entities would be identical. Rather, the Court finds that the most reasonable interpretation of the statute consistent with legislative intent is that Fannie Mae's legal actions while under conservatorship and in cases seeking to preserve the assets of the FHFA are subject to the federal statute of limitations that applies to "Agency" actions under Section 4617(b)(12)(A).

Further, the Court finds that the six-year statute of limitations for contract claims under Section 4617(b)(12)(A) applies to Fannie Mae's quiet title claim, rather than the shorter three-year

limitations period for tort claims. "If a claim is dependent upon the existence of an underlying contract, the claim sounds in contract, as opposed to tort." Stanford Ranch, Inc. v. Maryland Cas. Co., 89 F.3d 618, 625 (9th Cir. 1996). In this case, the quiet title claim is dependent upon the underlying mortgage lien, which is itself based upon an interest created by a mortgage contract. The claim is also dependent upon Fannie Mae's underlying deed of trust and the related promissory note. Thus, the Court will apply the six-year statute of limitations pursuant to Section 4617(b)(12)(A) to Fannie Mae's quiet title claim. [2]

For statute of limitations calculations, the clock begins on the day the cause of action accrued. Clark v. Robison, 944 P.2d 788, 789 (Nev. 1997). A cause of action accrues "when a suit may be maintained thereon." Id. In this case, the foreclosure sale was on March 29, 2013. The Court thus finds that all of Plaintiffs' claims began to run on the date of the foreclosure sale as these claims all stem from issues or disputes regarding the sale and its effect. Plaintiffs filed their complaint on June 26, 2017. Plaintiff's claims are thus timely filed.

Having found that Plaintiffs' claims are timely filed, the Federal Foreclosure Bar, 46 U.S.C. § 4617(j)(3) thus resolves this matter. The Ninth Circuit has held that the Federal Foreclosure Bar preempts foreclosures conducted under NRS Chapter 116 from extinguishing a federal enterprise's property interest while the enterprise is under FHFA's conservatorship unless FHFA affirmatively consented to the extinguishment of the interest. Berezovksy, 869 F.3d at 927– 31. Under Berezovksy, summary judgment based on the Federal Foreclosure Bar is warranted if

---

[2] As the Court has found that these claims should be construed as claims brought by the FHFA, the Court is required in any case to construe the limitations period in its favor. "To the extent that a statute is ambiguous in assigning a limitations period for a claim," it "must receive a strict construction in favor of the Government." Fed. Deposit Ins. Corp. v. Former Officers & Directors of Metro. Bank, 884 F.2d 1304, 1309 (9th Cir. 1989) (quoting *Badaracco v. Commissioner,* 464 U.S. 386, 391 (1984)).

the evidence establishes that the enterprise had an interest in the property at the time of the HOA foreclosure sale. Id. at 932– 33. The Court finds that the evidence establishes that Fannie Mae had an interest in the property at the time of the HOA foreclosure sale.

The Court considers if Plaintiffs provided the proper foundation and sufficient evidence to show that Fannie Mae acquired a property interest prior to the foreclosure sale. To establish Fannie Mae's property interest, Plaintiffs attach printouts from Fannie Mae's Servicer and Investor Reporting ("SIR") electronic database. The printouts are accompanied by a declaration of Graham Babin, an employee of Fannie Mae. Babin translates the printouts and identifies the Guide. He also specifically identifies the portions of the printouts that detail the date that Fannie Mae acquired the note and the deed of trust and that recount the servicing history of the loan.

The Buyers argue that these documents are insufficient to support a finding that Fannie Mae had an interest in the property at the time of the foreclosure sale. Specifically, the Buyers argue that the Babin declaration is insufficiently authenticated because it fails to describe how Babin became familiar with the SIR database and what the policies and procedures for the use of the database are.

The Court finds these arguments to be unavailing. It is not necessary for individuals to testify to having personal knowledge as to the accuracy of the entries in a database. U-Haul Intern., Inc. v. Lumbermens Mut. Cas. Co., 576 F.3d 1040, 1044 (9th Cir. 2009). Rather, it is merely required that the authenticating declarant has personal knowledge of the company's recordkeeping practices. Id. Babin states his familiarity with Fannie Mae's systems "that contain data regarding mortgage loans acquired and owned by Fannie Mae." He explains what the various codes and formulations within the SIR database mean. The printouts support the finding that there was a servicing relationship between Fannie Mae and Nationstar at the time of the foreclosure sale. The

Court finds this to be sufficient, as has the Ninth Circuit and the Nevada Supreme Court, with substantially similar evidence. See, e.g., Berezovsky, 869 F.3d at 932 – 33 (allowing the Guide, employee declarations and computer screenshots to establish Freddie Mac's property interest); Fed. Home Loan Mortg. Corp. v. SFR Investments Pool 1, LLC, 893 F.3d 1136, 1149–50 (9th Cir. 2018) (same); Nationstar Mortg., LLC v. Guberland LLC-Series 3, 420 P.3d 556 (Nev. 2018) (unpublished) (Nevada Supreme Court allowing same evidence to establish an enterprise's property interest).

The Court also finds that there is no evidence in the record that FHFA affirmatively consented to the sale. The Ninth Circuit is clear in its construing of 12 U.S.C. § 4617j(3) that it does not provide for implied consent to foreclosure sales. Berezovsky, 869 F.3d at 929. Without evidence of affirmative consent, the Court will not find that FHFA consented to the sale.

Based on the foregoing, the Court grants summary judgment in favor of Plaintiffs and declares that the Federal Foreclosure Bar prevented the foreclosure sale from extinguishing Fannie Mae's interest in the property. The Court finds this holding to be decisive as to all claims in this matter and dismisses the remaining claims as a result.

**VI.   CONCLUSION**

**IT IS ORDERED** that Plaintiff Federal National Mortgage Association's Motion for Summary Judgment (ECF No. 26) is granted.  The Court declares that Defendants Ron Haus and Eva Berou acquired the property subject to Fannie Mae's deed of trust.  The Clerk of the Court is instructed to enter judgment accordingly.

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that the lis pendens filed in this case is expunged. (ECF No. 2).

The Clerk of Court is instructed to close this case.

DATED: September 30, 2019.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**